IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:14CR00026 |
| | ) | (Civil Action No. 7:17CV81282) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ANGEL TORRES, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Senior United States District Judge |

Angel Torres has moved to vacate his federal conviction and sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, to which Torres has responded, making the matter ripe for consideration. For the reasons that follow, the government's motion to dismiss will be granted and Torres' motion to vacate will be denied.

**Background**

On May 8, 2014, the government filed a criminal complaint against Torres, alleging that Torres violated 21 U.S.C. § 846 by conspiring to distribute methamphetamine on or about May 5, 2014, in Carroll County, Virginia. The criminal complaint and attached affidavit were executed by Kevin Moore. At that time, Moore was a police officer employed by the City of Salem, Virginia, who served as a member of a United States Drug Enforcement Administration ("DEA") task force. Based on the criminal complaint and affidavit, a warrant was issued for Torres' arrest. Moore executed the warrant on May 12, 2014.

On June 19, 2014, a grand jury in the Western District of Virginia returned a superseding indictment against Torres and ten codefendants. Count One charged Torres with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846.

The government subsequently received information indicating that Moore had engaged in criminal conduct. On October 9, 2014, Moore was arrested on a criminal complaint alleging that he had engaged in bribery and obstruction of justice. On December 16, 2014, Moore entered a plea of guilty to a one-count felony information, which charged him with agreeing to receive and accept sexual favors from a cooperating witness in return for making a favorable sentencing recommendation to a federal prosecutor on behalf of that witness, in violation of 18 U.S.C. § 201(b)(2)(A). On February 9, 2015, this court sentenced Moore to a term of imprisonment of 30 months. See United States v. Moore, No. 7:14-cr-00075 (W.D. Va. Feb. 9, 2015).

In December of 2014, while the charge against Torres remained pending, the government provided information about Moore's prosecution to counsel for Torres and other defendants named in the superseding indictment. See Govt.'s Mot. Dismiss Ex. 2, ECF No. 486-2; see also Pet.'s Supp'l Opp'n 2, ECF No. 506 (acknowledging that the government "complied with its obligations to provide the information about Kevin Moore to counsel for Mr. Torres"). Torres now claims that defense counsel failed to share the information with him before he pled guilty.

On March 25, 2015, Torres entered a plea of guilty to Count One of the superseding indictment, pursuant to a written plea agreement. As permitted by Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agreed that Torres should receive a term of imprisonment of 220 months.

During the plea hearing conducted pursuant to Rule 11, Torres was placed under oath and asked a series of questions to ensure that he understood the consequences of pleading guilty. See Plea H'rg Tr. 5–35, ECF No. 468. Based on his responses to the court's questions, the court

determined that Torres possessed the capacity to make a voluntary and intelligent plea. The court also determined that Torres understood the charge to which he was pleading guilty, as well as the purpose of the Rule 11 proceeding.

The court instructed the Assistant United States Attorney ("AUSA") to review the charge against Torres, the elements of the offense to which he intended to plead, the penalties prescribed by statute for that offense, and the most important provisions of the plea agreement that Torres had reached with the government. Id. In response, the AUSA explained that Torres would be pleading guilty to conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. Id. at 8. The AUSA advised that such offense carries "a mandatory minimum 10 years' imprisonment up to the maximum of life imprisonment," as well as "a period of supervised release following incarceration of at least five years." Id. at 9. The AUSA then outlined several sections of the plea agreement, including the provision in which the parties "agreed that under the terms of . . . Rule 11(c)(1)(c) that a term of 220 months of incarceration is an appropriation disposition in [Torres'] case." Id. at 10. When asked if the AUSA's summary of the plea agreement was consistent with his own understanding of the agreement, Torres responded in the affirmative. Id. at 13.

The court then inquired as to whether Torres was voluntarily pleading guilty. In response to questions from the court, Torres confirmed that no one had made any promises or guarantees regarding the disposition of his case other than those set forth in the plea agreement, and that that no one had attempted to force him to plead guilty. Id. at 14. When asked if he was making a plea of guilty because he believed it was in his best interest "and because [he was], in fact, guilty of the crime charge in Count One of the indictment," Torres responded in the affirmative. Id. at

15. Torres also indicated that he understood that the parties had agreed to a term of imprisonment of 220 months under Rule 11(c)(1)(C), and that he would be entitled to withdraw his guilty plea if the court rejected the plea agreement. Id. at 17.

The court subsequently reviewed additional rights that Torres would waive by pleading guilty rather than going to trial. Notwithstanding all of the valuable rights that he would waive by pleading guilty, as well as the significant penalties that could be imposed upon conviction, Torres indicated that he was "sure" that he still wished to plead guilty. Id. at 33. The court then asked Torres to explain what he had done that made him believe that he was guilty of the offense charged in Count One of the superseding indictment. In response, Torres advised the court that he had entered into an agreement with other people to distribute methamphetamine, and that he had "front[ed] drugs to other people . . . with the understanding and the agreement that they would sell those drugs and pay [him] at a later time." Id. at 34–35.

The court then called upon the AUSA to offer evidence in support of the proposed plea of guilty. Proceeding by proffer, the AUSA summarized the government's evidence as follows:

> Beginning around 2010 and continuing until at least May of 2014, an organized group of individuals engaged in a conspiracy to distribute large amounts of methamphetamine . . . .
>
> The defendant here today, Mr. Angel Torres, was a part of this conspiracy. And he was distributing methamphetamine in and around the Western District of Virginia and the Middle District of North Carolina.
>
> Specifically, . . . if he were to go to trial, the evidence would show that Mr. Torres was involved with Gerardo Perez, Silvano Perez-Coronado, Joseph Ryan Gentry, Cristian Perez, and others both charged and not charged at this point in time in the distribution of methamphetamine.

4

> The evidence would show that these individuals were actually . . . coming from the California area to this area here in the Western District of Virginia . . . for the purpose of distributing methamphetamine, to make money off of it.

Id. at 36–37.

The AUSA proceeded to describe several controlled purchases made from one of Torres' codefendants; the events surrounding the execution of a search warrant at a house in Dobson, North Carolina, where methamphetamine and firearms were recovered; and the information provided by two of Torres' codefendants following their arrests. Id. at 37–40. The AUSA then recounted the events leading up to Torres' own arrest. Specifically, on May 4, 2014, agents conducted an undercover operation to recover approximately two pounds of methamphetamine and a vehicle that was used to transport methamphetamine from California. Id. at 41. Following a recorded telephone conversation between a confidential source and Torres' brother, Torres and a codefendant went to the confidential source's residence to retrieve the vehicle and methamphetamine. Id. The confidential source advised Torres and the codefendant that the items were not at her residence but that she would take them to the area where the vehicle and methamphetamine were located. Id. Agents subsequently followed the confidential source, Torres, and the codefendant to a Walmart parking lot in Galax, Virginia, where Torres and the codefendant were arrested. Id. at 42. Approximately two and a half ounces of methamphetamine were found in the codefendant's possession. Id. Following their arrests, the codefendant admitted that Torres had been supplying him with methamphetamine since 2011, and that the quantity found in his possession was the last of a pound that had been "fronted" by Torres. Id.

The AUSA concluded the summary of the evidence by identifying a number of individuals who would have testified against Torres and provided corroborating information regarding his involvement in the conspiracy. Id. at 44. The AUSA also emphasized that "the conspiracy involved well more than [the] 500 grams of methamphetamine [with] which Mr. Torres had been charged." Id.

When asked if the AUSA's summary of the evidence was consistent with Torres' understanding as to what the government would have been able to prove if the case had gone to trial, Torres responded in the affirmative. Id. at 44. In response to additional questions, Torres admitted that the quantity of methamphetamine for which he was responsible "exceeded 500 grams in quantity," which would produce a "very high" range of imprisonment under the United States Sentencing Guidelines. Id. at 45. Torres also acknowledged that the Guidelines would likely "recommend a much greater sentence" than the parties had agreed to in the plea agreement. Id.

At the conclusion of the hearing, the court emphasized that it was an important day for Torres, and that he was "proposing to plead guilty pursuant to Rule 11(c)(1)(C) to a serious criminal charge with the bargain, . . . understanding, agreement, [or] contract, that [Torres] will receive a sentence of 220 months if the court accepts the plea agreement." Id. at 47. Torres advised the court that he did not have any further questions for the court or his attorney, and that he was "sure" that he wanted to plead guilty in accordance with the plea agreement. Id. at 48. Based on Torres' sworn statements, the court determined that Torres was capable of making an informed plea, that he understood the nature and consequences of his plea, and that his plea of guilty was a knowing and voluntary plea supported by an independent basis in fact as to each of

6

the essential elements of the conspiracy offense. Id. at 49. The court accepted Torres' plea of guilty and took his plea agreement under advisement. Id.

In preparation for sentencing, a probation officer prepared a presentence investigation report ("PSR") that summarized Torres' offense conduct. According to the PSR, Torres was "the most culpable of all defendants in this conspiracy," and "was known as the 'boss' to the individuals he was supplying methamphetamine." PSR ¶¶ 42 & 51, ECF No. 375. The probation officer noted that Torres purchased methamphetamine in California for $6,000 per pound, paid couriers to transport the methamphetamine across the country, and then sold the methamphetamine in Virginia and North Carolina for $16,000 to $18,000 per pound. Id. at ¶ 42. The probation officer identified several coconspirators who distributed methamphetamine for Torres, one of whom admitted purchasing a pound of methamphetamine every two to three weeks during the course of the conspiracy. Id. at ¶¶ 42, 45. The probation officer also noted that Torres "sent individuals to operate and maintain [a] stash house in Dobson, North Carolina," that firearms were stored at the house in Dobson and possessed by Torres' codefendants, and that Torres owned all of the vehicles utilized to transport methamphetamine from California. Id. at ¶¶ 42, 51.

The probation officer determined that Torres was "responsible for a conservative 131.544 kilograms of methamphetamine," which resulted in a base offense level of 38 under the Sentencing Guidelines. Id. The probation officer also applied a two-level enhancement for possession of a firearm, a two-level enhancement for maintaining a premises for the purpose of distributing a controlled substance, a three-level leadership enhancement, and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 42. When

combined with a criminal history category of I, this total offense level produced a recommended range of imprisonment of 360 months to life under the advisory Sentencing Guidelines, which was well above the 220-month sentence agreed to in the plea agreement. The probation officer noted that if the defendant had gone to trial and been convicted, he may not have received credit for acceptance of responsibility. Without such credit, the defendant would have potentially faced a recommended range of life imprisonment. See id. at ¶ 97.

Torres appeared for sentencing on September 3, 2015. At the beginning of the hearing, both sides agreed that there was a factual basis for the quantity of methamphetamine attributed to Torres in the PSR, and that they had no objections to the facts summarized by the probation officer or the proposed application of the Sentencing Guidelines. Sentencing Hr'g Tr. 3, 8–10, ECF No. 469. Accordingly, the court adopted the PSR in its entirety and utilized it in determining whether to accept the plea agreement. After hearing from counsel regarding the parties' agreement under Rule 11(c)(1)(C), the court advised Torres that it was of the belief that the agreed-upon sentence of 220 months was fair, and that the court intended to approve the plea agreement. Id. at 16. The court emphasized that the agreed-upon sentence constituted a "major reduction" in light the scope of the conspiracy, and that it was "not likely that [Torres would] get any additional time off down the road." Id. When asked if he still wanted the court to approve the plea agreement, Torres responded in the affirmative. Id. Consequently, the court accepted the plea agreement and imposed the agreed-upon term of imprisonment of 220 months. The judgment was entered on September 8, 2015. Torres did not appeal his conviction or sentence.

On October 10, 2017, Torres moved to vacate his conviction and sentence under § 2255. The original motion, which was filed pro se, lists three grounds for relief. In his first and

primary claim, Torres alleges that defense counsel provided ineffective assistance by allowing him to plead guilty without reviewing the evidence that the original case agent, Kevin Moore, had been convicted of bribery. In his second claim, Torres summarily alleges that defense counsel failed to completely advise him of the facts and law relevant to his decision to plead guilty, failed to timely move for the suppression of evidence material to Torres' conviction, failed to timely object to the unlawful admission of evidence, and failed to investigate or present unspecified evidence at the sentencing hearing. In his third claim, Torres alleges that he was convicted and sentenced in violation of his constitutional rights.

On April 6, 2018, the government moved to dismiss Torres' § 2255 motion on the grounds that the motion was not timely filed and that the claims of ineffective assistance fail on the merits. Following the filing of the government's motion, Torres submitted a response in opposition.

On October 2, 2018, the court appointed the Office of the Federal Public Defender ("FPD") to consult with Torres regarding the claims raised in his § 2255 motion. The pending motion to dismiss was taken under advisement pending further order of the court.

On May 21, 2019, the FPD filed a supplemental brief in opposition to the government's motion to dismiss and a request for an evidentiary hearing. On June 11, 2019, the government filed an amended reply. The matter is ripe for disposition.

## Discussion

### I. Applicable Legal Standards

Section 2255 sets forth four grounds on which a prisoner in federal custody may collaterally attack his sentence: (1) "the sentence was imposed in violation of the Constitution or

laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proof by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

The court may resolve a § 2255 motion without conducting an evidentiary hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). In such a circumstance, the facts must be considered "in the light most favorable to the § 2255 movant." Id. However, speculative or conclusory allegations do not entitle a movant to an evidentiary hearing, much less relief under § 2255. See United States v. Roane, 378 F.3d 382, 400–01 (4th Cir. 2004) (noting that "conclusory assertions" or "airy generalities" are insufficient "to stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing") (internal quotation marks and citation omitted); see also Jones v. Polk, 401 F.3d 257, 269 (4th Cir. 2005) ("[A] federal habeas court is permitted to hold [an evidentiary] hearing only if the petitioner alleges additional facts that, if true, would entitle him to relief.") (internal quotation marks and citation omitted).

## II. Claims of Ineffective Assistance

In seeking relief under § 2255, Torres claims that his attorney provided ineffective assistance. Such claims are reviewed under the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a

10

petitioner must establish (1) that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment, meaning that counsel's performance fell below "an objective standard of reasonableness," and (2) that the deficient performance prejudiced the defense, which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 687–88, 694. A petitioner must meet both prongs of the test; neither deficient performance or prejudice alone will suffice. Id. at 697.

### A. Claim of ineffective assistance related to Kevin Moore

In his primary claim of ineffective assistance, which is the sole focus of the supplemental brief filed by the FPD, Torres alleges that defense counsel was ineffective for failing to inform him of Kevin Moore's prosecution and conviction. Torres alleges that "he would not have pled guilty at all, but would have proceeded to trial," if "he had known that the officer whose affidavit initiated his prosecution" had been charged with the type of "gross criminal conduct that had sent Moore to prison." Pet.'s Supp'l Opp'n 3, ECF No. 506.

In moving to dismiss this claim, the government argues that Torres is unable to satisfy either prong of the Strickland test. Upon review of the record, the court concludes that the claim can be disposed of on the prejudice prong. Accordingly, the court need not address the existing factual dispute concerning the performance prong.[1] See Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an

---

[1] The government submitted an affidavit from defense counsel indicating that he and Torres discussed Moore's charge and the surrounding allegations during at least one conversation, and that Moore's prosecution was a matter of general knowledge at the Roanoke City Jail, where Torres was being held. Torres disputes counsel's allegations and asserts that "he was NOT advised and was NOT aware of the legal problems of Officer Kevin C. Moore prior to his plea of guilty." Statement of Disputed Issues of Material Fact ¶ 1(B), ECF No. 488-1.

ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

In the context of a guilty plea, a defendant can establish prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Importantly, the defendant's "subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). As the United States Court of Appeals for the Fourth Circuit has explained:

> The challenger "cannot make that showing merely by telling [the court] now that [he] would have gone to trial then if [he] had gotten different advice." Pilla v. United States, 668 F.3d 368, 372 (6th Cir. 2012). In other words, to obtain relief from a guilty plea, the defendant must do more than allege he would have insisted on going to trial if counsel had not misadvised him as to the consequences of that decision. The "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Christian v. Ballard, 792 F.3d 427, 452 (4th Cir. 2015).

The circumstances in this case are similar to those in United States v. Dyess, 730 F.3d 354 (4th Cir. 2013), in which the Fourth Circuit concluded that the defendant could not make the requisite showing of prejudice resulting from trial counsel's alleged failure to discover and disclose a lead investigator's misconduct prior to the defendant's guilty plea. During the course of the criminal proceedings, the investigator had an affair with the defendant's wife and allegedly helped to craft her testimony at the defendant's sentencing hearing. 730 F.3d at 358. Although the defendant received information prior to the hearing that led him to suspect that his

12

wife had become romantically involved with the investigator, trial counsel declined to raise the issue without concrete evidence. Id. at 362. The defendant was ultimately sentenced to life imprisonment. Id. at 358. After unsuccessfully appealing the district court's decision to deny his motion to withdraw the guilty plea, the defendant moved to vacate his sentence under § 2255 on the basis that trial counsel was ineffective in failing to discover and disclose the investigator's misconduct. On appeal from the denial of the § 2255 motion, the Fourth Circuit concluded that the district court "correctly dismissed" this claim under Strickland, explaining as follows:

> . . . Dyess cannot show prejudice. Dyess was facing a potential life sentence; he pled guilty shortly after the Government informed him that his only opportunity to avoid a life sentence was to be acquitted or to plead guilty and offer substantial assistance in exchange for a sentence reduction [under § 5K1.1 of the Sentencing Guidelines]. Dyess then failed to offer assistance. The Government had overwhelming evidence of Dyess' guilt—his arrest and prosecution were the result of a long investigation complete with wiretaps, drug buys, and co-conspirator testimony. Dyess also received a substantial benefit from pleading guilty—the Government dismissed nine of the eleven counts against him, one of which carried a 20-year mandatory minimum. We recognize that Dyess ultimately received a life sentence despite pleading guilty. This fact, however, does not change our analysis because, at the time Dyess entered his plea, a rational defendant would have recognized that a conviction inevitably would lead to a life sentence. Conversely, entering a plea agreement, which removed a count with a higher mandatory minimum (20 years under § 848 versus ten years under § 841(b)), and offering substantial assistance provided the best opportunity to avoid a life sentence. While Dyess subjectively claims he would have gone to trial had he known of Hart and Rader's relationship, objectively a reasonable defendant would have pled guilty and offered substantial assistance.

Id. at 362–63 (footnote omitted).

The Fourth Circuit reached a similar conclusion in United States v. Santiago, 632 F. App'x 769 (4th Cir. 2015), in which defense counsel failed to notice that "the district court

13

committed error [at the Rule 11 hearing] when it stated that Santiago faced a maximum of five years imprisonment rather than a minimum of five years." 632 F. App'x at 774. The Fourth Circuit acknowledged that the failure to alert a criminal defendant to a potential mandatory minimum sentence is "a serious omission that strikes at the core of Rule 11." Id. Nonetheless, the Court held that the fact that Santiago's counsel failed to notice the district court's error did "not mean that Santiago was prejudiced by his counsel's failure," as required by Strickland. Id. In determining that the claim of ineffective assistance could be disposed of on the prejudice prong, the Fourth Circuit noted that the government "presented overwhelming evidence of Santiago's guilt." Id. Additionally, "the low-end of Santiago's guidelines range on Count 1 dropped from 70 to 51 months as a result of the three-level reduction of acceptance of responsibility provided by the plea agreement." Id. If Santiago had gone to trial and not received such reduction, "he would have been looking at a longer sentence on Count 1." Id. "In effect, then, the 'only consequence' of Santiago's decision to plead guilty rather than going to trial" was that Santiago "'got a shorter prison term'" than he would have otherwise received. Id. at 775 (quoting Pilla, 668 F.3d at 373). The Fourth Circuit concluded that such decision "certainly did not prejudice Santiago." Id. Because Santiago could not establish "Strickland prejudice," the Fourth Circuit affirmed the dismissal of his § 2255 motion. Id.

In this case, as in Dyess and Santiago, the government possessed overwhelming evidence of Torres' guilt, including the evidence proffered at the Rule 11 hearing that Torres did not dispute. During the hearing, Torres admitted that he conspired to distribute over 500 grams of methamphetamine, and there is simply no evidence in the record to contradict the facts on which the court relied to accept his plea of guilty. In addition, Torres received substantial benefits from

14

pleading guilty pursuant to a Rule 11(c)(1)(C) agreement. By doing so, Torres limited his potential sentence to 220 months on a charge that carried a statutory maximum of life imprisonment. If Torres had gone to trial and not received credit for acceptance of responsibility, he would have potentially faced a recommended life term under the Sentencing Guidelines, based on his significant involvement in the conspiracy and the large quantity of methamphetamine for which he was responsible. Thus, the practical consequence of Torres' decision to plead guilty is that he received a shorter sentence than he would have received if he had gone to trial. That decision did not prejudice Torres. See id.

For these reasons, the court believes that the record conclusively shows that Torres is not entitled to relief under Strickland. While Torres subjectively claims that he would have proceeded to trial if he had known about Moore's prosecution, Torres "cannot show that declining to plead guilty 'would have been rational under the circumstances.'" Fugit, 703 F.3d at 260 (quoting Padilla, 559 U.S. at 372); see also Pilla, 668 F.3d at 373 (holding that "no rational defendant in Pilla's position would have proceeded to trial" where the defendant "faced overwhelming evidence of her guilt" and "would have faced a longer term of incarceration" if she had proceeded to trial). Thus, this claim of ineffective assistance clearly fails for lack of prejudice.[2]

---

[2] Having determined that the record conclusively shows that Torres is unable to satisfy the prejudice prong of Strickland, the court denies Torres' request for an evidentiary hearing on this claim. Additionally, in light of the court's decision, the court finds it unnecessary to address whether this claim was timely filed. See 28 U.S.C. § 2255(f)(4) (allowing a federal prisoner to file a motion to vacate within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence"); see also Pet.'s Supp'l Opp'n at 4 (asserting that Torres "filed his petition within one year of learning about Moore's prosecution and conviction").

### B. Remaining claims of ineffective assistance

In addition to the foregoing claim pursued by the FPD, Torres' original motion includes a second claim of ineffective assistance, in which he summarily alleges that counsel (1) failed to completely advise him of the facts and law relevant to his decision to plead guilty, (2) failed to timely move for the suppression of evidence material to Torres' conviction, (3) failed to timely object to the unlawful admission of evidence, and (4) failed to investigate or present available evidence at the sentencing hearing. See Pet.'s § 2255 Mot. at 12, ECF No. 472. Unlike his first claim of ineffective assistance, this claim is wholly conclusory. Torres does not identify any particular evidence that should have been investigated, challenged, or presented by counsel. Nor does he identify any specific legal or statutory principles that were not explained to him before he entered a plea of guilty. Under existing precedent, such vague and conclusory allegations of ineffective assistance are insufficient to avoid dismissal and do not entitle Torres to an evidentiary hearing. See Roane, 378 F.3d at 400–01; see also Dyess, 730 F.3d at 359 (emphasizing that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court") (internal quotation marks and citation omitted).

### III. Other Alleged Constitutional Violations

The same deficiencies exist with respect to the third and final claim asserted in Torres' original form motion, in which he summarily states as follows:

> Torres' conviction and sentence are violative of his right to freedom of speech and to petition, his right to be free of unreasonable search and seizure, his right to due process of law, his rights to counsel, to jury trial, to confrontation of witnesses, to present a defense, and to compulsory process, and his right to be free of cruel and unusual punishment under the Constitution.

16

Pet.'s § 2255 Mot. at 5. Torres does not elaborate on this claim in any of the memoranda filed in support of his motion.[3] Because the claim is devoid of further explanation or factual development, it "fail[s] the requirement that a habeas petition 'is expected to state facts that point to a real possibility of constitutional error.'" Dyess, 730 F.3d at 359 (quoting Blackledge v. Allison, 431 U.S. 63, 75 n.7 (1977)). Accordingly, the claim may be dismissed without further investigation or discussion.[4] Id.

## Conclusion

For the reasons stated, the court is convinced that the record conclusively shows that Torres was not prejudiced as a result of counsel's purported failure to disclose the information pertaining to Kevin Moore, and that Torres has not alleged any additional facts that, if true, would entitle him to relief under § 2255. Accordingly, the court will grant the government's motion to dismiss and deny Torres' motion. Additionally, because Torres has failed to make a substantial showing of the denial of a constitutional right, the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

---

[3] Subsequent submissions from Torres and the FPD focus exclusively on the claim of ineffective assistance related to Kevin Moore's prosecution.

[4] The court notes that it is unclear from the original motion whether Torres intended to assert a separate claim regarding the voluntariness of his plea in light of counsel's alleged failure to disclose Moore's criminal conduct. In any event, such claim is subsumed by his ineffective assistance claim and subject to dismissal for the same reasons set forth above. See Hill, 474 U.S. at 58 (holding that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel"); see also United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) ("To evaluate a claim that a guilty plea was involuntary or unknowing due to ineffective assistance of counsel, we use the familiar framework established in Strickland.") (citing Hill, 474 U.S. at 57–58).

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to Torres and all counsel of record.

DATED: This 3rd day of August, 2020.

_____
Senior United States District Judge